IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA MARTIN,** | : | No. 1:22-cv-01482 |
| **Plaintiff** | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| **CLIFTON WHITE,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant Clifton White ("Defendant")'s motion to dismiss Plaintiff Patricia Martin's ("Plaintiff")'s complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).[1] (Doc. Nos. 1, 7.) For the reasons stated herein, the Court will grant in part and deny in part Defendant's motion.

I.   **BACKGROUND**[2]

Plaintiff, and her late husband, Donald Martin ("Mr. Martin"), sought to purchase firearms from Defendant. Initially, Plaintiff's complaint alleges that Mr. Martin purchased twenty-five (25) collectible firearms from Defendant, who held "himself out in the field as an expert." (Doc. No. 1 ¶¶ 5, 9-10, 13-14.) Later, she states that both she and her husband purchased the firearms. See (id. ¶¶ 24, 30, 43). These firearms were purportedly purchased with

---

[1] Defendant's motion does not explicitly cite Federal Rule of Civil Procedure 12(b)(6). However, Defendant argues that Plaintiff's claims are time-barred—which the Court construes as a contention that Plaintiff's complaint fails to state a claim upon which relief can be granted. (Doc. No. 7 at 2.)

[2] This background is drawn from the allegations in Plaintiff's complaint, which the Court has accepted as true. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). A separate set of facts, drawn from the affidavit submitted by Defendant (Doc. No. 8-2), is considered in connection with the Court's discussion regarding personal jurisdiction for the reasons discussed infra.

the Martins' marital funds so that they "could be used as retirement funds and could be sold in the event they needed extra support." (Id. ¶¶ 10-11.)

Plaintiff claims that each firearm purchase amounted to a separate contract. (Id. ¶ 43.) Plaintiff avers that before she and her husband would agree to purchase a given firearm, Defendant "would represent the firearm to be of a specific brand, style, authenticity, condition, and/or value, and request a certain sum of money." (Id. ¶ 24.) "When purchasing the firearms," Plaintiff and her husband "made clear that they were purchasing the product based on it being authentic and not a replica and were purchasing it for the purpose of a collection item that could be resold for the same or higher price later." (Id. ¶ 43.) In fact, Plaintiff maintains that her husband "kept detailed notes regarding what White represented to him as the authenticity and condition of the firearms sold" by Defendant. (Id. ¶ 15.) Plaintiff also alleges that "[t]he representations as [to] the authenticity and value of the guns purchased by the Martins from White were material to the transaction, as the Martins would not have purchased them, either for the same amount of money or at all, knowing they were fake or not of the valued represented." (Id. ¶ 30.) Despite these alleged representations, Plaintiff purportedly discovered that the firearms were either fake "and/or misrepresented as to the[ir] value" while later attempting to sell the firearms purchased from Defendant. (Id. ¶¶ 17-19.) Plaintiff claims that these misrepresentations led to a loss of over five-hundred thousand dollars ($500,000.00). (Id. ¶ 20.)

On November 9, 2022, Plaintiff filed a six-count complaint alleging: breach of oral contract (Count I); fraudulent misrepresentation (Count II); violations of the Pennsylvania Fair Trade Practices and Consumer Protection Law ("UTPCPL"), see 73 Pa. Stat. Ann. § 201 et seq. (Count III); breach of an implied warranty of fitness (Count IV); breach of an implied warranty of merchantability (Count V); and negligent misrepresentation (Count VI). See (Doc. No. 1).

On November 11, 2022, Defendant filed the pending motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). His motion also requests that if "any claims survive dismissal, . . . the Court transfer the case to the Northern District of Georgia, Gainesville Division." (Doc. No. 7.) Defendant filed his motion with a brief in support and an affidavit containing declarations to challenge this Court's authority to assert personal jurisdiction over him.[3] (Doc. Nos. 7, 8, 8-1.) On November 28, 2022, Plaintiff filed a brief in opposition, and on December 12, 2022, Defendant filed a reply brief in further support of his motion. (Doc. Nos. 9-10.) Having been fully briefed, the motion is ripe for disposition.

## II.     LEGAL STANDARD

For the reasons discussed infra, the Court is ultimately persuaded by Defendant's argument that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over Defendant. Accordingly, only the legal standards for the threshold question of standing[4] (Rule 12(b)(1)) and for determining the existence of personal jurisdiction (Rule 12(b)(2)) are provided below.

### A.     Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss a case for lack of standing is properly brought under Rule 12(b)(1) because standing is a jurisdictional matter. See Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). When evaluating a motion brought under Rule 12(b)(1), a court must first determine whether the movant presents a facial or factual attack. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). A facial

---

[3] Defendant's brief in support and affidavit was refiled on November 15, 2022, as a separate entry on the Court's docket. (Doc. No. 8.)

[4] "Subject matter jurisdiction decisions usually precede personal jurisdiction decisions." 2 James Wm. Moore et al., Moore's Federal Practice §§ 12.30[1] and 12.30[1] n.4.2 (3d ed. 2005).

3

challenge contests the sufficiency of the pleadings, meaning a court must consider the allegations of the complaint in the light most favorable to the plaintiff. See Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). By contrast, when reviewing a factual attack, a court may consider evidence outside the pleadings. See id.

Defendant "makes a facial attack on Plaintiff's standing." (Doc. No. 8 at 11.) Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint and must construe those facts in favor of the non-moving party. See Ballentine, 486 F.3d at 810.

To establish standing, a plaintiff must first allege "an 'injury in fact,' or an 'invasion of a legally protected interest' that is 'concrete and particularized.'" See In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Second, the plaintiff must establish a "causal connection between the injury and the conduct complained of." See Lujan, 504 U.S. at 560. Finally, the plaintiff must allege the likelihood "that the injury will be redressed by a favorable decision." See id. at 561.

B.   **Federal Rule of Civil Procedure 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). If the moving party submits "competent evidence refuting jurisdiction,"[5] the "plaintiff may not rely on bare pleadings but

---

[5] A court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324 (3d Cir.

4

must support those pleadings with 'actual proofs'" to carry its burden of establishing personal jurisdiction.  See Carbonite Filter Corp. v. C. Overaa & Co., 353 F. Supp. 3d 332, 336 (M.D. Pa. 2018) (quoting In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 557 (M.D. Pa. 2009)); see also Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir.1984) (explaining "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction" (citing International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700 (3d Cir.1982)).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at 144-45 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)).  Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." See 42 Pa. Cons. Stat. § 5322(b).  Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state.  See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

---

2009); Connell v. CIMC Intermodal Equip., No. 1:16-cv-00714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

Two types of personal jurisdiction comport with these notions of due process: general and specific jurisdiction. See Daimler AG v. Bauman, 134 S. Ct. 746 (2014). "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state," Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n. 8 (1984)), as well as when a defendant consents to jurisdiction or is present or domiciled in the jurisdiction when process is served, see 42 Pa. Cons. Stat. § 5301(a)(1)(i)-(iii). Specific jurisdiction encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" See Daimler AG, 134 S. Ct. at 754 (citations omitted). Specific jurisdiction is usually evaluated on a claim-by-claim basis. See Marten, 499 F.3d at 296 (citing Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001)).

Typically, a court's determination as to whether the exercise of specific jurisdiction is proper entails a three-part inquiry: (1) the defendant must have sufficient minimum contacts that are "'purposefully directed . . .' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'" See O'Connor, 496 F.3d at 317 (alterations in original) (first citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), then Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414, and Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).

The Third Circuit Court of Appeals has provided specific guidelines for tort and contract claims, both of which Plaintiff's complaint includes. For contract claims, precedent from the Third Circuit dictates use of the following factors to determine whether Defendant has sufficient

minimum contacts with the forum state to establish specific jurisdiction: (1) the location of the contract negotiations; (2) whether the non-resident solicited business from the forum state; (3) whether the non-resident invoked and received benefits under the laws of the forum state; (4) the contemplated future consequences of the contract; (5) the terms and provisions of the contract; (6) the parties' course of dealing; and (7) the type of goods sold. See Remick, 238 F.3d at 253-56; Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996); Empire Abrasive Equip. Corp. v. H.H. Watson, Inc., 567 F.2d 554, 559 (3d Cir. 1977); Strick Corp. v. A.J.F. Warehouse Distributors, Inc., 532 F. Supp. 951, 958 (E.D. Pa. 1982).

Tort claims, in turn, can also be analyzed under the "effects test." See Marten, 499 F.3d at 297 (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 n. 6 (3d Cir.2003)). The effects test requires a plaintiff to show: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." See id. (quoting IMO Indus. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir.1998)). A court need not address the first two prongs if a defendant's conduct is not expressly aimed at the forum. See id.

### III.    DISCUSSION

#### A.    Whether Plaintiff Has Standing

Defendant argues that Plaintiff lacks standing to bring her claims because she has not suffered an injury-in-fact. Specifically, Defendant claims that Plaintiff's complaint contains internal contradictions which, if properly construed, reveal that she did not herself purchase the

firearms or participate in the discussions leading up to the purchase of the firearms.  (Doc. No. 8 at 10-15.)   To support his contention that Plaintiff did not communicate with him about the purchase of firearms, Defendant explains that Plaintiff's allegation that "Mr. Martin kept detailed notes regarding what White represented to him as the authenticity and condition of the firearms" is inconsistent with allegation that the misrepresentations were made to "the Martins."  (Doc. No. 8 at 14.)  Next, to challenge Plaintiff's contention that she was a party to the firearms contracts, Defendant highlights a potential contradiction between her allegations that "'White sold Mr. Martin several guns'" and "'Mr. Martin purchas[ed] . . . the firearms,'" and her allegation that "the Martins agreed to buy . . . firearms."  (Id. at 12-13.)  Defendant also argues that the allegation that he "breached twenty-five separate contracts with the Martins by selling him a firearm" is internally inconsistent.  (Id.)  Based on these alleged inconsistencies, Defendant argues that Plaintiff lacks standing as to:

- Her breach of contract claims (Count I) because only a party to a contract can claim to have suffered an injury-in-fact;

- Her fraudulent and negligent misrepresentation claims (Counts II and VI) because the alleged misrepresentations were made to Mr. Martin, not her; and

- Her UTPCPL claim (Count III) because she did not purchase the goods, and "'[a] private cause of action under the [UTPCPL] is available only to purchasers or lessors of goods . . . Zerpol Corp. v. DMP Corp., 561 F. Supp. 404, 415 (E.D. Pa. 1983).'"

(Doc. No. 8 at 11-15.)

The Court is unpersuaded by Defendant's arguments because they do not rule out an inference that Plaintiff was a party to the firearms contracts or that she communicated with Defendant regarding their purchase.  For example, Plaintiff's claim that Defendant communicated with Mr. Martin about the firearms does not contradict the allegation that Defendant communication with her as well—both can be true.  Moreover, to the extent there are any inconsistencies in the allegations referred to by Defendant, Plaintiff's complaint contains

8

independent grounds for plausibly inferring that she was a party to the firearms contracts: her allegations that "White would represent the firearm to be of a specific brand, style, authenticity, condition, and/or value, and request a certain sum of money" and that her marital funds were used to purchase the firearms. (Doc. No. 1 ¶¶ 11, 24.) Accordingly, Defendant's arguments, at most, give rise to multiple plausible inferences about the communications between Defendant and the Martins and about Plaintiff's status as a party to the alleged contracts. Because the Court must construe Plaintiff's allegations as true and draw all reasonable inferences from them in a light most favorable to her, the Court concludes that Plaintiff has alleged sufficient facts to give rise to a plausible inference that she communicated with Defendant regarding the purchase of firearms and that she was a party to the firearm contracts.

With these inferences in mind, the Court can quickly dispense with the question of whether Plaintiff has alleged an injury-in-fact for the purposes of Article III standing. Indeed, "[t]he injury-in-fact requirement is 'very generous' to claimants, demanding only that the claimant 'allege[ ] some specific, 'identifiable trifle' of injury." See Cottrell v. Alcon Lab'ys, 874 F.3d 154, 162 (3d Cir. 2017) (quoting Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982)). "Typically, a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a 'classic' and 'paradigmatic form[ ]' of injury in fact." Id. at 163 (quoting Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 293 (3d Cir. 2005)) (alterations in originally). In fact, the Third Circuit has "explained that where a plaintiff alleges financial harm, standing 'is often assumed without discussion.'" See id. (first quoting Danvers Motor Co., Inc., 432 F.3d at 293, and then citing Carter v. HealthPort Techs., LLC, 822 F.3d 47, 55 (2d Cir. 2016) and Cent. Ariz. Water Conservation Dist. v. U.S. E.P.A., 990 F.2d 1531, 1537

(3d Cir. 1993). "Pecuniary injury is clearly a sufficient basis for standing." Cent. Ariz. Water Conservation Dist., 990 F.2d at 1537.

Here, Plaintiff avers that she suffered pecuniary harm in connection with her claims. See (Doc. No. 1 at 11-18). Moreover, as to the more specific requirements under the UTPCPL, under which "'[a] private cause of action under the [UTPCPL] is available only to purchasers or lessors of goods," see Zerpol Corp. v. DMP Corp.. 561 F. Supp. 404, 415 (E.D. Pa. 1983), Plaintiff's complaint has alleged sufficient facts to give rise to a plausible inference that she was a purchaser of the firearms for the reasons discussed supra. Accordingly, she has met her low burden of alleging an injury-in-fact, and Defendant's motion is properly denied. See, e.g., Liberty Towers Philly LP v. Ulysses Asset Sub II, LLC, No. CV 18-4357, 2020 WL 3642483, at *3 (E.D. Pa. July 6, 2020) (concluding that the plaintiff had met the injury in fact requirement by "alleg[ing] financial harm").

      **B.**    **Whether the Court has Personal Jurisdiction over Defendant**

As noted above, Defendant submitted an affidavit in support of his motion to dismiss, arguing that it is improper for this Court, situated in Pennsylvania, to exercise personal jurisdiction over him because the activities underlying Plaintiff's claims occurred in a different state, Georgia. See (Doc. Nos. 8 at 20; 8-1; 8-2). In response, Plaintiff argues that "in a Motion to Dismiss, the Court should not consider facts outside of the record," and that the Court should deny the motion because "Plaintiff has alleged in its Complaint the sufficient contacts [required to establish personal jurisdiction] and the court must look at Plaintiff's Complaint in the light most favorable to Plaintiff." (Doc. 9 at 9.)

Plaintiff seemingly conflates the standards of Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). Unlike a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6),

"[a] Rule 12(b)(2) motion. . . is inherently a matter which requires resolution of factual issues outside the pleadings." See Time Share Vacation Club, 735 F.2d at 66 n.9 (citing International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700 (3d Cir. 1982)). As discussed supra, once a motion is made under Rule 12(b)(2), the "party asserting personal jurisdiction has the burden of proving its existence if challenged," see 2 James Wm. Moore et al., Moore's Federal Practice § 12.31[4] (3d ed. 2005), and "if the moving party does submit competent evidence refuting jurisdiction, the non-moving party shoulders the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the matter," see Carbonite Filter Corp. v. C. Overaa & Co., 353 F. Supp. 3d 332, 336 (M.D. Pa. 2018) (citing In re Chocolate Confectionary Antitrust Litigation, 674 F. Supp. 2d at 595); see also Time Share Vacation Club, 735 F.2d at 66 n.9 (explaining that a plaintiff cannot "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss").

Here, Plaintiff's brief in opposition to Defendant's motion rests on her bare pleadings. Because she has failed to provide competent evidence for purposes of this Rule 12(b)(2) motion, the Court draws the following relevant background from Defendant's affidavit[6]:

- Defendant is a resident of Dahlonega, Georgia;
- Defendant owns no "real property" in Pennsylvania and has never resided in the State;
- Defendant did not travel to Pennsylvania "in connection with any of the 25 firearms";
- Defendant "had some telephone calls with [Mr.] Martin regarding the 25 Firearms," and "[Mr. Martin] may have been in Pennsylvania for some of those calls";
- Mr. Martin "owned a pecan farm" in Georgia;
- Defendant and Mr. Martin "negotiated the price of each of the 25 firearms" and discussed their conditions at the pecan farm in Georgia;

---

[6] See In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 559 n.18.

11

- Defendant sold 25 firearms to Mr. Martin between 2009-2014;

- Defendant "did not travel to Pennsylvania to sell" any of the 25 firearms;

- Defendant delivered the 25 firearms to Mr. Martin at his pecan farm in Georgia; and

- Mr. Martin paid for each of the 25 farms at his pecan farm in Georgia.

(Doc. No. 8-1 at 2-3.)

Defendant's affidavit reveals that he had no contacts with Pennsylvania at all, apart from incidental phone calls with Mr. Martin that do not establish sufficient contacts.[7] Because Plaintiff was not involved with these incidental phone calls, and because her alleged injuries stem from representations made and contracts entered into while she was in Georgia, any possible contacts Defendant may have had with Pennsylvania do not give rise to Plaintiff's injuries either. See, e.g., Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124,

---

[7] The Court observes that "the mere placing of phone calls by a defendant into the forum state does not constitute purposeful availing and, therefore, does not confer jurisdiction over the defendant." See Abyaneh v. Merchants Bank, N., 667 F. Supp. 198, 201 (M.D. Pa. 1986) (first citing Bucks County Playhouse v. Bradshaw, 577 F. Supp. 1203 (E.D.Pa.1983), then citing Time Share Vacation Club, Inc., 735 F.2d at 61, and Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026 (5th Cir.1983)). Instead, "[t]he question is whether the phone calls from [Defendant] to [Plaintiff] in the forum state were so numerous, continuous or of such a substantial quality as to justify the assumption of jurisdiction in this case." See id. (citing Baron & Co., Inc. v. Bank of New Jersey, 497 F. Supp. 534, 538 (E.D. Pa. 1980)). Here, not only did the primary discussions and representations during the alleged contractual negotiations occur in Georgia, but the firearms were paid for and delivered there as well. Moreover, nothing in Defendant's affidavit suggests that he specifically intended to contact Plaintiff when he was in Pennsylvania with the intention of selling him firearms in the state. Against this backdrop, Defendant did not purposely avail "himself of the privilege of conducting business [in Pennsylvania]." See Burger King Corp., 471 U.S. at 475-476 (cleaned up). Nor was he so "shielded by the benefits and protections' of the forum's laws" such that it would be reasonably foreseeable for him to be haled into a federal court in Pennsylvania. See id. Accordingly, these phone calls fall quantitatively and qualitatively short of the purposeful contacts required to establish personal jurisdiction. See Buckley v. Universal Sewing Supply, Inc., No. 1:19-cv-00794, 2019 WL 5260365, at *3 (M.D. Pa. Oct. 17, 2019) (explaining that "'[w]hat is necessary [for specific jurisdiction] is a deliberate targeting of the forum,' such as an effort 'to sell products . . . in Pennsylvania specifically'" (emphasis added) (quoting Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 780 (3d Cir. 2018))).

130 (3d Cir. 2020) (explaining that a plaintiff's contract and intentional tort-based claims did not arise out of a defendant's activities in Pennsylvania because "the alleged oral . . . contract was neither formed nor breached in Pennsylvania" and because "the alleged communications or misappropriation" did not occur there either).  Accordingly, based on the facts attested to by Defendant, and in light of Plaintiff's failure to provide competent evidence to the contrary, the Court concludes that Plaintiff has failed to meet her burden of demonstrating that the Court has personal jurisdiction over Defendant.  See, e.g., Sones v. Dental Equip., LLC, 4:20-cv-00460, 2020 WL 3547521, at *2 (M.D. Pa. June 30, 2020) (granting a Rule 12(b)(2) motion because the plaintiffs "rel[ied] on their bare pleadings" and "d[id] no[t] provide any additional factual information" in response to the defendants' affidavits" contesting the Court's personal jurisdiction," meaning they failed their burden of "counter[ing] defendants' affidavits with contrary evidence" to demonstrate the that the court had jurisdiction);  Shujauddin v. Berger Bldg. Prod., Inc., No. 19-cv-00876, 2019 WL 9102043, at *1 n.2  (E.D. Pa. June 18, 2019) (rejecting one of the arguments raised by the plaintiff to establish personal jurisdiction because the plaintiff "offered no 'sworn affidavits or other competent evidence' to rebut [the defendant's] assertion[s]" denying the existence of the minimum contacts necessary for personal jurisdiction).

## IV.    CONCLUSION

For the above reasons, Defendant's motion to dismiss will be granted, as the Court lacks personal jurisdiction over Defendant.  An appropriate order follows.